BARNARD KELLY v. THE DULUTH, SOUTH SHORE & ATLANTIC RAILWAY COMPANY.

| 92 | 19 |
|-----|-----|
| 121 | 583 |
| d121 | 584 |

*Railroad companies—Injury at junction—Contributory negligence of engineer.*

1. An engineer is reckless who, with knowledge that there are no semaphores, flagman, or gates at a railroad crossing, a view of which is obstructed, attempts to make the crossing without seeing that the way is clear for so doing.

2. A compliance with the duty of giving the statutory signals before crossing another road will not relieve a railroad engineer from the duty of keeping his train under such control as to enable him to stop it in time to avoid a collision with another train at the crossing, and his failure so to do is not excused by reason of the greater rate of speed at which the other train is being run, which constitutes the only difference in the negligent conduct of the two engineers.

Error to Marquette. (Stone, J.) Argued May 12, 1892. Decided May 20, 1892.

Negligence case. Plaintiff brings error. Affirmed. The facts are stated in the opinion.

*Clark & Pearl,* for appellant.

*A. B. Eldridge* and *A. E. Miller,* for defendant.

McGRATH, J. Plaintiff, a locomotive engineer on a freight train on the Milwaukee & Northern Railway, was injured in a collision with a train upon defendant's road, at a grade crossing near Republic, at about 3 o'clock in the afternoon of May 5, 1890. The course of the Milwaukee & Northern at that point is east and west, and that of defendant's road is north and south. The Chicago & Northwestern road runs parallel with the Milwaukee & Northern until it reaches a point within 50 feet of defendant's road. A spur of the Chicago & Northwestern starts at a point about 350 feet east of the crossing, and runs southwesterly along the foot of a high hill, reaching defendant's road at a point about 500 feet south of the crossing. A spur from the Milwaukee & Northern starts about 600 feet west of the crossing, running southeasterly until it strikes defendant's tracks at a point about 1,050 feet south of the crossing. Two triangles are thus formed, one west and the other east of defendant's road. The depot of the Milwaukee & Northern is in the west triangle, and the depot of the Chicago & Northwestern is in the east triangle. The latter depot is about 90 feet long; the westerly end of the building is within 150 feet of the defendant's tracks. The Republic mine lies a short distance south of the crossing and triangles. Plaintiff's train was going west, and collided with an ore train on defendant's road, which

was going north. Plaintiff's train was making an up grade of 33 feet to the mile, and the ore train was on a down grade of 37 feet to the mile. The stop board on the Milwaukee & Northern is 343 feet east of the crossing. At the stop board of the Milwaukee & Northern road about 100 feet of defendant's tracks can be seen at a point between 200 and 300 feet south of the crossing, but, after reaching a point 75 feet west of the stop board, the Chicago & Northwestern depot obstructs the view, until a point is reached 150 feet east of the crossing.

Plaintiff's declaration alleges that—

The said injury was caused by the gross carelessness and negligence of the said defendant company in the manner of running its said train on its said track, and the various grounds of negligence complained of, and which caused or contributed to produce the injury complained of, are as follows:

"1. That the said train of the defendant company did not stop before reaching the said crossing, as required by the statutes of Michigan, but approached said crossing with great speed, with a pushing engine, as well as an engine drawing the said train, giving no signal of its approach, either by ringing the bell or blowing the whistle.

"2. Because the defendant company did not station a flagman at the said crossing to signal and warn as to approach of trains.

"3. Because the defendant company did not erect a semaphore tower at the said crossing to warn approaching trains on either track, and within the common vision of both tracks, and high enough so as not to be obstructed in its vision, and to give signals to approaching trains, as safety and care would require.

"4. Because the defendant company neglected to erect on its said railroad line, at a proper distance from said crossing, a stop board, as a notice to engineers of the nearness of a railroad crossing, and requiring them to stop their train before reaching said railroad crossing."

Defendant concedes the negligence of the parties in

charge of its train, but insists that plaintiff was also guilty of negligence. The plaintiff had been running on the Milwaukee & Northern for five years, and frequently made this crossing. He knew that there was no semaphore, watchman, or gates at this crossing. Defendant's testimony was that its train was stopped at a point between 300 and 400 feet from the crossing, and that the crossing whistle was given upon starting. Plaintiff's fireman testifies that he did not see defendant's train, and plaintiff and his fireman say that they did not hear any whistle or bell before they saw the train. The fireman says:

"When we stopped our engine at the board that I speak of, you couldn't have heard the noise of a train coming, without a whistle or the bell being rung, but a little ways, I should say. If they were inside of 800 feet of the crossing, perhaps I might have heard them. It is hard to say anything of that kind. I can't say. Sometimes an engine will have two injectors, and sometimes one, and sometimes none. According to the noise your engine is making, you could hear further or not so far. I have no way to judge how far I could hear. If a whistle had been blown when we stopped, if they had been inside of 800 feet, I could have heard them easy. I could have heard the bell ringing three or four hundred feet, I think,—three hundred down their track, I mean."

Plaintiff says that he stopped his train at the stop board, and had reached a speed of from six to seven miles an hour when he reached the west end of the Chicago & Northwestern depot; that his fireman called to him that the train was coming; that he then reversed his engine, but not in time to avoid the collision; that he could have stopped his train had he had another car-length. Plaintiff's engine struck the defendant's train just in the rear of the driving wheels. The testimony as to the speed of the defendant's train was conflicting. Some of the witnesses fixed it at 7 miles an hour, and others at from 20 to 25 miles.

Both of these engineers were reckless. Both knew that there were no semaphores, flagman, or gates at this crossing. The view of each was obstructed. It was the duty of each, in the performance of his obligations to his employers, to see that the way was clear before attempting to make the crossing. A compliance with the statutory duty of stopping and giving the crossing signals did not relieve either from the duty of keeping his train under control, so that it could have been stopped in time to avoid the collision. The only difference in conduct was possibly in the rate of speed of the trains, but this does not excuse plaintiff in the neglect of a plain duty in the line of his employment.

The trial judge was right in directing a verdict for defendant, and the judgment is affirmed.

The other Justices concurred.