BECKER *v.* DETROIT CITIZENS' STREET RAILWAY CO.

1. STREET RAILWAYS—CROSSINGS—COLLISION OF CARS—INJURY TO MOTORMAN—CONTRIBUTORY NEGLIGENCE.

Where a street-railway ordinance required electric cars to come to a full stop 20 feet from the crossing of another line, a motorman who, having made the stop, saw a car from 150 to 200 feet distant on the intersecting line, was not guilty, as a matter of law, of contributory negligence, precluding a recovery for injuries received in a collision with such other car, in assuming that the car would be stopped in compliance with the ordinance, and running in ahead of it upon the crossing.

2. CONTRIBUTORY NEGLIGENCE—CONFLICTING EVIDENCE—QUESTION FOR JURY.

The question of contributory negligence should be submitted to the jury when the testimony is conflicting, or where the case is not free from doubt upon the facts, or where candid and intelligent men might reach different conclusions thereon.

3. STREET RAILWAYS—CROSSINGS—RIGHT OF PRECEDENCE.

2 Comp. Laws 1897, § 6463, which provides that at all crossings of the tracks of two street railways, when a car on each

road approaches such crossing at "substantially the same time," the car on the track first laid shall be entitled to the right of way, does not give precedence to a car on the older line which is from 150 to 200 feet distant when the car on the newer line comes to a stop in compliance with an ordinance requiring all cars to be stopped 20 feet from such crossings.

4. SAME—ORDINANCE REQUIRING FULL STOP.

The fact that the company operating the older of two intersecting street-railway lines is by the general statute (2 Comp. Laws 1897, § 6463) given precedence when its car approaches a crossing at substantially the same time as a car on the other line will not warrant it in ignoring an ordinance requiring all cars to come to a full stop at such crossings, and it does not have the right of way until it has stopped its car in compliance therewith

Error to Wayne; Hosmer, J. Submitted October 3, 1899. Decided October 24, 1899.

Case by Alonzo Becker against the Detroit Citizens' Street Railway Company for personal injuries. From a judgment for plaintiff, defendant brings error. Affirmed.

*Brennan, Donnelly & Van De Mark*, for appellant.

*Lehman Bros.* and *F. J. Riggs*, for appellee.

MOORE, J. Woodward avenue, in the city of Detroit, runs north and south. Forest avenue runs east and west, crossing the first-named avenue at right angles. The plaintiff was a motorman upon an electric car upon Forest avenue. His car was going west. Before reaching the east street-crossing of Woodward avenue, his car was stopped. Upon receiving the signal from the conductor to go forward, he started his car across the street. It was struck by a north-bound car on the Woodward-avenue track, which did not make a stop before reaching the Forest-avenue track. The motorman on the Woodward-avenue car claimed he did not make the stop because his brakes did not work, and the track was wet, causing the wheels to slip. The plaintiff received injuries. He

claimed he was without negligence, and that his injuries were caused by the negligence of the motorman on the defendant's car. He sued the defendant, and from a judgment in his favor defendant has brought the case here upon writ of error.

The court was requested to direct a verdict in favor of the defendant because the plaintiff was guilty of contributory negligence. Its refusal to do so is assigned as error. Exception was also taken to the charge given by the court, and to its failure to give certain of the defendant's requests.

The street-railway ordinance of Detroit requires the motorman of any car approaching the crossing of any other street railway to cause the car to come to a full stop before reaching the crossing, and at least 20 feet therefrom. Section 6463, 2 Comp. Laws 1897, provides that:

"At all crossings of the tracks of two street railways, when a car on each road approaches such crossing at substantially the same time, the car on the track first laid shall have precedence and be entitled to the right of way: *Provided,* no car shall be stopped on such crossing."

It is claimed by the defendant that plaintiff had not discharged his full duty by simply stopping his car, but was bound to ascertain whether it was safe for him to proceed before doing so. Counsel argue in their brief:

"Regardless of any ordinance requiring cars to stop at intersection of street-railway crossings, we think the law imposes the same duty upon motormen in charge of such cars as is imposed upon the public generally in crossing the tracks of a steam railway, viz., to stop, and observe whether 'or not the crossing can be made with safety. The application of electricity to street-car propulsion in cities makes possible, and indeed the public demands, a high rate of speed in these cars, which makes a corresponding increase in the space required to stop them; and where, upon intersecting lines, cars are traveling at intervals of a very few moments, with the chances very great that two cars will often approach such intersection simultaneously, any other rule would be absolutely dangerous to the traveling public. * * * If it is necessary for a

person to stop, look, and listen before crossing a railroad track, or to look just before entering upon a street-railway track, as held in the *McGee Case,* how much more necessary is it, from the standpoint of public safety, for a motorman, who finds himself in a place of safety, to assure himself that the way is safe, before attempting to make the crossing.   In the *McGee Case* it was held not sufficient to look when at a distance of 14 feet from the track, because one might easily mistake the distance of the car, if in sight.   And if one does look, and then proceeds to cross, and is struck by a car, it is idle to say that his own negligence did not contribute to his injuries.   So, in the case of a motorman who has brought his car to a standstill 20 or 40 feet from the crossing of another street railway, and where his view is unobstructed for a considerable distance, it is idle to say that he takes the precautions the law requires of him when he starts up, and loses control of his car, and collides with another car on an intersecting track, which, from very necessity, must have been in dangerous proximity to the crossing at the time of his starting, and which other car he knew, by custom and under an ordinance, had a right to proceed to within 20 feet of the crossing before being brought to a standstill. \* \* \*   Were this the case of an ordinary pedestrian undertaking to cross the track of a street railway, the question would be at once disposed of by the rule laid down in the *McGee Case,* 102 Mich. 112 (26 L. R. A. 300, 47 Am. St. Rep. 507), and others.   There it was held that it was not sufficient to look when 14 feet from the track, but that one must look immediately before entering upon it.   In that case plaintiff claimed that when he looked, 14 feet away, the track was clear.   Can the rule be different where a person in charge of a heavy car full of passengers looks when 40 or 45 feet away, and observes a car approaching at full speed, waits a period of time, and then proceeds on his way, without looking to see that there is no danger of collision, until it is too late to stop in case there is danger ?   The duty of a person in charge of a heavy car, with the safety of perhaps a score of persons on his hands, ought certainly to be of no lower degree than that of a pedestrian, who can stop almost instantly, or, if necessary, retrace his steps,"— citing, also, *Pratt* v. *Railway Co.,* 38 Minn. 455; *Birmingham Mineral R. Co.* v. *Jacobs,* 101 Ala. 149; *Chicago, etc., R. Co.* v. *Rockford, etc., R. Co.,* 72 Ill. 34; *Kelly* v. *Railway Co.,* 92 Mich. 19.

Counsel insist that, if the rule contended for by them is applied to the facts of this case, plaintiff cannot recover. These cases are not directly in point. All of them, except *McGee* v. *Railway Co.*, 102 Mich. 112 (26 L. R. A. 300, 47 Am. St. Rep. 507), are cases where steam roads were involved. The rule established by most of them is substantially that, "although an engineer on an engine of a railroad having the older right of way can presume, when approaching a crossing, that the employés of a train on the intersecting road will stop their train as required by law, it is his duty to keep a lookout for approaching trains, and if, in the face of facts reasonably indicating that the approaching train on the intersecting line is not going to stop at said crossing, the engineer attempts to cross; he is chargeable with negligence." The Illinois, the Minnesota, and the Alabama cases all hold that the question of negligence is one for the jury; while the Alabama case holds that the engineer had a right to presume that the employés on the intersecting road would stop within the distance required by law. The case of *Kelly* v. *Railway Co.*, 92 Mich. 19, was one where the view of the crossing was obstructed, and where both the engineers are said by the court to have been reckless. In *Birmingham Mineral R. Co.* v. *Jacobs*, 101 Ala. 149, it was said:

"The plaintiff's intestate had a right to rely upon the performance by those on the defendant's train, in charge of it, of every act imposed by law on them, when approaching the crossing. The presumption was that they would stop within 100 feet of the crossing, as the statute required them to do. It cannot be imputed as negligence to him that he did not anticipate culpable negligence on the part of the employés of defendant."

The court was requested by plaintiff to charge the jury that the plaintiff had a right to presume that the motorman in charge of the Woodward-avenue car would stop his car before crossing the Forest-avenue track. The court declined to give this request in that language, but modified it, and instructed the jury:

"I am asked to charge you that it was the duty of the plaintiff, upon stopping his car at the easterly side of Woodward avenue, to use his eyes, and ascertain whether or not the track was clear, before he attempted to make the crossing.  He could not proceed upon the theory that, because an ordinance required the defendant's motorman to stop, he could proceed with impunity across the track, regardless of the nearness of the other car.   The fact that he stopped the car at the place directed by the ordinance did not relieve him from the duty of keeping his car under control, so that it could have been stopped in time to avoid a collision.   It was the duty of each of these motormen, in the performance of their obligations to the employer, to see that the way was clear before attempting to make the crossing.   I think, gentlemen of the jury, in giving that request, I would give it with the modification that I have suggested before,—that the distance that the man was away from the crossing, the rate of speed that he was coming, and various other matters of that description, might determine, as you may find them,—would determine,—whether the plaintiff in this case had a right to believe that the motorman was going to comply with the ordinance, and stop before the crossing.   Now, if it appeared in this case that he was a sufficient distance away, and it appeared to Mr. Becker, exercising that reasonable degree of prudence which you would expect of a man under those circumstances, that the other car was going to stop before it reached the crossing,—and what I said about a mistake of judgment on the part of Mr. Fillmore would apply equally well to Mr. Becker in that regard,—I say, if it appeared to him, exercising that reasonable degree of prudence, that the other car was going to stop before it reached the crossing, then, and under those circumstances, he was not guilty of negligence in starting his car to go ahead; if it did not, undoubtedly he would be.

"I am asked to charge you that if, at the time plaintiff stopped his car 20 or 30 feet east of the sidewalk crossing, he saw the Woodward-avenue car 300 or 400 feet south of the crossing, and if the plaintiff remained with his car at a standstill for a sufficient length of time to allow a passenger to alight, I charge you that, under those circumstances, it was his duty, before the starting of the car, to observe the whereabouts of the other car, and whether or not it was safe for him to cross; and if he neglected this duty,

and ran 25 or 30 feet without looking for the other car, and then, for the first time, observed that the other car was in dangerous proximity to the crossing, and he himself and his car were going too fast to stop at the point of collision, he is guilty of contributory negligence, and cannot recover. That is undoubtedly so, gentlemen."

It was the claim of the plaintiff, and he offered proof to sustain the claim, that, when his car was stopped, he looked to the south, and saw the Woodward-avenue car 300 or 400 feet away; that, after he got the signal to start, his car moved forward 15 or 20 feet, to the east crossing, when he looked, and saw the car 150 or 200 feet away, and supposed it would stop before it reached Forest avenue, as the ordinance required it to do, and that he had ample time to cross in safety. We do not think it can be said, as a matter of law, that where a motorman, who has already made the stop required by ordinance, attempts to cross another road with his car when the approaching car is 150 or 200 feet away, and is required by ordinance to stop before reaching the crossing, he is guilty of contributory negligence. If he must wait before he can go forward until he knows that the approaching car will stop, he will fail to meet the demands of modern street-railway traffic. The rule is well settled that the question of plaintiff's contributory negligence should be submitted to the jury when the testimony is conflicting, or where the case is not free from doubt upon the facts, or where candid and intelligent men might reach different conclusions upon the facts. *Swoboda* v. *Ward*, 40 Mich. 420; *Teipel* v. *Hilsendegen*, 44 Mich. 461; *Chicago, etc., R. Co.* v. *Miller*, 46 Mich. 532; *Lewis* v. *Railway Co.*, 54 Mich. 55 (52 Am. Rep. 790); *Palmer* v. *Railroad Co.*, 56 Mich. 1; *Staal* v. *Railroad Co.*, 57 Mich. 239; *Luke* v. *Mining Co.*, 71 Mich. 364; *Dundas* v. *City of Lansing*, 75 Mich. 499 (5 L. R. A. 143, 13 Am. St. Rep. 457); *Adams* v. *Iron Cliffs Co.*, 78 Mich. 271 (18 Am. St. Rep. 441); *Brezee* v. *Powers*, 80 Mich. 172; *Underhill* v. *Railway Co.*, 81 Mich. 43; *Guta* v. *Railway Co.*

Id. 291; *Engel* v. *Smith*, 82 Mich. 1 (21 Am. St. Rep. 549); *Roux* v. *Lumber Co.*, 85 Mich. 519 (13 L. R. A. 728, 24 Am. St. Rep. 102); *Graves* v. *City of Battle Creek*, 95 Mich. 266 (19 L. R. A. 641, 35 Am. St. Rep. 561).

Defendant insists plaintiff cannot recover because, under the statute, the defendant's car had the right of way. We think this contention cannot be sustained, under the proofs in the case. The Forest-avenue car had made its stop, and started on its way, when the Woodward-avenue car was at least 150 or 200 feet away; so that it cannot be said the cars approached the intersection at substantially the same time. The statute does not authorize a street-railway company in a city to ignore the provisions of an ordinance requiring a car to come to a full stop before making a street-railway crossing, and the car did not have the right of way until it made the stop.

The case was carefully tried, and the defendant is not in a condition to complain of the manner in which the case was submitted to the jury.

Judgment is affirmed.

The other Justices concurred.