AMANTA *v.* MICHIGAN CENTRAL RAILROAD CO.

1. Railroads—Crossing Accident—Negligence.

Evidence that plaintiff was struck by a locomotive at defendant's crossing, that he looked both ways, and, owing to smoke and darkness, was unable to see any train coming, that a freight had just passed on an adjacent track and a passenger train went by making considerable noise, smoke, etc., and plaintiff was unable to hear or see the approaching locomotive, which gave no signal and was running backwards without a headlight and with only small red and white lights displayed, sustained the trial court in refusing to direct a verdict for defendant.

2. Same—Contributory Negligence—Directed Verdict.

It is proper to submit to the jury the question of plaintiff's contributory negligence, if candid and intelligent men might reach different conclusions upon the question, or the testimony is conflicting.

3. Same—Lights—Warning.

Nor did the court err in charging the jury that if the de-

fendant operated its engine without lights after it was
so dark as to obscure approaching objects, defendant was
guilty of negligence.

4. SAME—APPEAL AND ERROR—SAVING QUESTIONS FOR REVIEW.
Having requested no instructions on the issue as to dark-
ness, etc., defendant could not review the court's failure
to charge as error.

5. SAME—EVIDENCE—CHARGE.
And evidence tending to show that an engine was seen
near the place of injury shortly after the accident, run-
ning backwards without lights, was not incompetent,
where the court instructed the jury not to consider the
evidence unless they found that the engine was the one
which injured plaintiff.

6. DAMAGES—HUMILIATION—SUFFERING.
It was not erroneous to permit the jury to determine
what damages plaintiff should receive for future pain
and suffering and mental anguish for the loss of an arm
and a leg though no evidence other than his physical
condition was offered on the subject.

Error to Kent; Brown, J. Submitted April 11,
1913. (Docket No. 49.) Decided October 1, 1913.
Rehearing denied January 5, 1914.

Case by John Amanta against the Michigan Cen-
tral Railroad Company for personal injuries. Judg-
ment for plaintiff. Defendant brings error. Af-
firmed.

*Wilson & Wilson* and *Kleinhans & Knappen*
*(Henry Russel* and *Frank E. Robson,* of counsel),
for appellant.

*George E. Nichols* and *E. F. Phelps,* for appellee.

KUHN, J. This action was brought to recover for
personal injuries caused, as it is claimed, by the negli-
gence of the defendant company. The plaintiff, who
resided in the city of Grand Rapids, on the 7th day
of October, 1910, was requested by a friend, named

Frank Provenzo, to go with him to visit his sick daughter in St. Mary's Hospital in that city. They left the home of plaintiff on Fourth avenue about 6 o'clock in the evening. Plaintiff claims that they walked from Fourth avenue north on Hilton street to Third avenue, where they turned east, walking on the south sidewalk until they reached the system of railroad tracks which cross Third avenue, running north and south. The first track is a long Grand Rapids & Indiana side track; next east, and 11½ feet from this side track, is the Grand Rapids & Indiana main track. Eight and one-half feet east of this is the Michigan Central main track. Next east, and from 8 to 9 feet from the main track, is the Michigan Central side track. Still further east are the tracks of the Pere Marquette Railroad Company. It is the claim of plaintiff that when they reached the tracks it was dark and they were stopped by a freight train on the Grand Rapids & Indiana tracks coming from the south, and while waiting for this train to pass they crossed the street to the north side of Third avenue and stood on the walk until the train had passed. When they were ready to proceed, they saw a passenger train coming from the south on the Grand Rapids & Indiana main track and waited where they were until that train had passed. They then proceeded eastward until the plaintiff had reached a point about halfway between the Grand Rapids & Indiana main track and the Michigan Central main track, when he looked to the north and saw no train or locomotive coming from that direction and heard no bell or whistle; that he then looked to the south and then again to the north but heard and saw nothing to indicate the approach of a locomotive or train from either direction; that, believing themselves safe, they started to cross the main track of the Michigan Central Railroad; Provenzo being about two feet ahead of the plaintiff. As plaintiff stepped

onto the track, he was struck by a Michigan Central engine, which had just left its train at the Union Station, about half a mile north of Third avenue, and which was backing on the main track to the roundhouse, which is about a half mile south of Third avenue. Provenzo crossed in time and avoided being hurt, but plaintiff was struck by the engine and his right arm was severed at the shoulder and his left leg above the knee.

The negligence relied upon by the plaintiff is that this engine was being backed over the crossing without any lights and without ringing any bell or giving other warning of its approach. The trial court submitted the case to the jury, and a verdict of $8,750 was rendered in favor of the plaintiff. Judgment being had thereon, the case is brought here by writ of error.

It is the claim of the defendant that the engine was properly lighted with a red light on the right side and a white light on the left side, although it is also claimed that it was light enough to see an approaching train without them, as the sun had set within an hour and a three-quarter moon was visible, and there was an electric light about 15 feet above the ground. It is further claimed that the engine was backing slowly, about 6 miles per hour, and that if plaintiff had done as he claims he did, under the conditions existing, he must have seen the engine. Defendant's counsel requested the court to direct a verdict in favor of defendant on the ground of contributory negligence, which was denied, and in defendant's requests to charge a similar instruction was requested. On a motion for a new trial this question was again raised, and also that the verdict was against the weight of the evidence and was unsupported by the evidence.

This brings us to the first question discussed in defendant's brief whether, under the undisputed facts

in this case, the plaintiff was guilty of contributory negligence. It is urged that the verdict is predicated upon the finding of a physical impossibility and that therefore the testimony of the plaintiff and his companion that they looked and listened should be disregarded, as the physical facts show that they could not have done so; and the cases of *McCarthy* v. *Railway Co.*, 120 Mich. 400 (79 N. W. 631), *Strong* v. *Railway Co.*, 156 Mich. 66 (120 N. W. 683), and *Hamilton* v. *Railway*, 167 Mich. 5 (132 N. W. 453), are cited. It is conceded by plaintiff that, when a train is in plain view and it is impossible to stop and listen without seeing or hearing the train, testimony of the plaintiff that he did not hear or see the approaching train should be disregarded; but it is urged in the instant case, and it is supported by the testimony of witnesses, that at the time the accident happened the hour was dusk; that because of the passing of a long freight train and of the rushing of a passenger train the air was filled with dirt, smoke, and steam, and that because of the darkness, the dirt, smoke, and steam the plaintiff was unable to see the approaching locomotive running backward out of the darkness upon him without any lights on the rear end; that the noise of the other trains which had just passed made it impossible to hear the locomotive; and that under these facts the question of plaintiff's contributory negligence was properly submitted to the jury. Whether or not plaintiff observed that care which an ordinarily careful and prudent man would have exercised under all the circumstances was, it seems to us, a question for the jury.

The plaintiff and Provenzo testified that there were no lights on the engine and this is disputed by the trainmen. The engineer testified that he knew "the lights were properly lit as the hour was dark." Other witnesses testified that objects could be dis-

tinguished at varying distances of a hundred feet or more.

The question of plaintiff's contributory negligence should be submitted to the jury when the testimony is conflicting or where candid and intelligent men might reach different conclusions upon the question. *Becker* v. *Railway Co.,* 121 Mich. 580 (80 N. W. 581); *Haines* v. *Railway Co.,* 129 Mich. 475 (89 N. W. 349); *Welch* v. *Railroad Co.,* 147 Mich. 207 (110 N. W. 1069). We cannot say that the case is so free from doubt as to warrant the conclusion that the plaintiff was guilty of contributory negligence as a matter of law.

The next point urged by the defendant is that the court in his charge assumed that it was dark at the time of the accident and erred in not submitting the degree of darkness to the jury. At the close of the proofs a colloquy took place between the court and counsel as follows:

"*The Court:* The defense admits if the lanterns were out or there were no lanterns on the rear end of this locomotive as it passed over this street in question, the defense would admit that it was negligence.

"*Mr. Charles Wilson:* No, your honor, we do not admit that, because we do not admit it was dark enough to require them.

"*The Court:* I say if it were dark at that time, if it were dark enough to have lights, then there would be no question but what you would admit the negligence if there were no lights.

"*Mr. Hugh Wilson:* Oh, yes, we will admit that. We haven't any hesitation about that.

"*The Court:* The question of light or dark is a question for the jury. If it was dark enough so it was necessary to have lights, so that lights would have been needed to have given a warning, then the defense admits that, if they did not have them, they were negligent, just as negligent as you want to make them. Then what would be the benefit of the testimony?

"*Mr. Charles Wilson:* I would not want to say

that we admit we were just as negligent as they claim we were.

"*The Court:* I am just saying that for the purpose of the argument.

"*Mr. Charles Wilson:* I do not want that statement to be taken as our admission, your honor.

"*The Court:* No, but then, as I understand it, there would be no question in the claims, or the claims of the defense, that if it were dark then you would be negligent if you did not have lights.

"*Mr. Charles Wilson:* Let me state our position; it is this: If it was dark enough to require lights, and it should be found that there were no lights on the rear of the engine, that would be fact to go to the jury on the question of negligence. It would not be conclusive evidence.

"*The Court:* I do not mean a man could be standing there, looking at the engine, and be run over and claim damages just because there were no lights there.

"*Mr. Charles Wilson:* That would be a fact to go to the jury, as to whether we were negligent. That is the extent of our admission."

It is urged that the position of the defendant was made clear in this colloquy, and that therefore it was unnecessary to call further attention to that position by special requests to charge.

The court, in his charge, with reference to this phase of the case, said:

"The traveler has a right to rely upon the exercise of proper caution on the part of the railroad company through its employees. It is required to give warning of its approach, if in the nighttime, by necessary lights and other signals, and if it fails so to do it is negligent. The negligence of which it is claimed the defendant was guilty is that the engineer of the engine in question ran and drove the engine backwards in a southerly direction upon the main track of the defendant company, up to and across Third avenue, while it was dark and the air contained dirt, smoke, and steam, without giving any warning whatever of the approach of the engine and without ringing a bell, blowing a whistle, or displaying lights

on the rear end or south end of the engine at the time of its approach to and upon Third avenue. The plaintiff claims that ordinary care for the protection of others required the man in charge of the locomotive, under the conditions as claimed by the plaintiff here, to give warning of its approach to and crossing of a public highway, such warning as I have before stated."

Again he said:

"I may say to you, however, that if you find that this locomotive was running backwards on the main track of the defendant, without lights on the rear of the tender, the south end going south, after it was dark enough to obscure the approaching locomotive, the defendant as a matter of law was negligent; and if you also find that the plaintiff stopped, looked, and listened, and used ordinary care and caution to detect danger and avoid injury, as he claims he did, then and in that case he is entitled to recover such damages as he has fairly shown you he has suffered."

It seems to us that this clearly outlined to the jury the facts which it was necessary for them to find in order to hold the defendant liable and was a proper statement of the law applicable to this case.

However, if more specific instruction was desired by the defendant, special request for such instruction should have been made and the failure to do so precludes defendant from assigning error. See *Pruner* v. *Railway*, 173 Mich. 146 (139 N. W. 48), and cases cited therein.

On the trial of the cause, several witnesses testified that an unlighted engine was seen standing south of Third avenue. A motion was made to strike out this testimony for the reason that there was no evidence to identify the engine which was seen with the engine which struck the plaintiff. The court, in his charge, with reference to this testimony, said:

"Some testimony has been offered by the plaintiff tending to show that an engine was seen south of

Third avenue and north of Fourth avenue just after the accident, and that such engine had no lights upon it, head or rear lights. The plaintiff claims that this testimony goes to establish his claim that, at the time he was struck by the engine and injured, there were no lights upon the south end of the engine which struck him. Before you can consider the evidence as to an engine south of Third avenue having no lights upon it, which was not directly identified as being the engine in question, you must first determine, from the evidence in the case and all the facts and circumstances here shown, whether or not such engine was the same engine that injured the plaintiff. If it was not the same engine, then you will not consider the testimony, regarding the lights or no lights on such engine; but, if you find from the testimony that it was the same engine, then you may consider this testimony as bearing upon the question of the presence or absence of lights on the south end of the engine at the time it struck the plaintiff."

There was conflict in the testimony as to exactly where the engine stopped after the accident. The engineer testified that as soon as the engine struck the plaintiff he stopped the engine within a few feet, and that the cab was immediately over the body when he stopped. This is contradicted by other witnesses, who came to the scene of the accident immediately after it happened, who said that the engine had gone 100 feet or more down the track and was not standing on the street. It seems to us that the court fully safeguarded the consideration of this testimony in charging the jury that, before they could consider this testimony, they must first find that the engine described by the witnesses was the engine that caused the accident.

Complaint is made as to the instruction to the jury with reference to the measure of damages. The extent of the plaintiff's injuries is not questioned, as the accident resulted in the loss of his right arm and his left leg. The plaintiff testified that he was 31

years old on October 7, 1912, and was a married man; that at the time of the accident his average wages were from $20 to $25 per week. It is claimed that since the accident he has been practically unable to do any work. Mortality tables were introduced in evidence, and it appears that the expectancy of the plaintiff is 34 years and that the present worth of his earning capacity at $20 per week would be $20,384. It is urged that there is nothing in the record to show that he was suffering pain at the time of the trial or that there was any evidence to show that he was likely to suffer pain in the future as a result of the accident, as it was claimed that his wound was entirely healed. The court charged the jury on the question of damages as follows:

"You may determine what compensation he should receive for pain and suffering, and for the humiliation of his condition; this includes the plain and suffering that he has already undergone, the mental condition that he is in and may continue to be in, and the pain arising therefrom."

It is urged that there is no evidence of humiliation and of future suffering. The physical condition of the plaintiff is a complete answer to this claim and was sufficient evidence to warrant the charge as given.

We have examined the other assignments of error but find them without merit. The judgment is affirmed, with costs.

STEERE, C. J., and MOORE, McALVAY, BROOKE, STONE, OSTRANDER, and BIRD, JJ., concurred.