ELIZABETH STAAL, ADMINISTRATRIX v. GRAND RAPIDS & INDIANA RAILROAD COMPANY.

*Injury to person crossing railway track—Speed of trains—Statutory and special safeguards—Contributory negligence—Damages—Support of step-children—Misconduct of counsel.*

1. Where trains are required by law to come to a full stop before crossing a railroad track, *it seems* that their neglect to do so, though not averred in a declaration for injury to persons crossing their track, has nevertheless some bearing on the question of the speed at which they were running near such crossing.

2. In an action for fatal injury to a person crossing a railway track the jury may properly consider whether the railroad company should not, apart from any statutory requirement, have set up special safeguards at the point where the injury took place, if at that point there were several tracks running side by side, and little opportunity to see a coming train and much noise and confusion.

3. A man was killed while trying to drive across a railway track. *Held,* that in the absence of any knowledge as to what was in his mind, he could not be conclusively found negligent unless no sensible explanation of his conduct was reasonably possible. He had a right to suppose that the railroad company would not violate any legal duty and

57 239
78 535
57 239
90 608
57 239
100 296
57 239
114 202
57 239
a121 218
f121 586
57 239
128 572
57 239
s23NW 795
129 4483
57 239
f147 225
57 239
145 3196
57 239
158 4 83

would not fail to take reasonable measures to prevent mischief. He could not be blamed for doing as seemed best under the circumstances and it would not necessarily be reckless to go forward rapidly.

4. Contributory negligence depends on what the party is bound to expect, and the case should not be taken from the jury when to do so will prevent their giving to either party the benefit of any inference which might be drawn from a comparison of all the facts.

5. Damages for fatal railway injury should be no more and no less than the widow of decedent and the next of kin have suffered by his loss. Where there is no dependent connection between them, their poverty and his wealth should not be considered. But where, as head of the family, he is the family supporter, the jury are entitled to the fullest insight into the family circumstances, and in the absence of special instructions they are at liberty to use their best judgment in arriving at results.

6. A widow is not legally obliged to support her step-children.

7. A verdict will not be disturbed for extravagances of counsel in summing up and urging inferences from facts in evidence, unless the trial court has plainly allowed them to mislead the jury.

Error to the Superior Court of Grand Rapids. (Parrish, J.) May 8–12.—June 10.

CASE. Defendant brings error. Affirmed.

*T. J. O'Brien* and *N. A. Earle* for appellant. One who is about to cross a railroad track must stop and see whether a train is so near as to make the transit dangerous: *Schaefert v. C. M. & St. P. R. Co.* 62 Ia. 624; *Grippen v. N. Y. C. R. Co.* 40 N. Y. 45; *Skelton v. Railway Company* L. R. 2 C. P. 631; *Pence v. C. R. I. & P. R. Co.* 63 Ia. 746.

*J. C. Fitz Gerald* and *Allen C. Adsit* for appellee.

CAMPBELL, J. The action in this case was brought by the widow and administratrix of Nicholas Staal, deceased, to recover damages for his death, alleged to have been caused by the negligence of defendant, by one of whose trains he was killed. Many errors were assigned, but upon the argument the grounds for reversal urged by defendant were confined to the rulings upon charges given and refused, and some other matters connected with the submission to the jury. A

verdict was given for $5000, which would give $1666.66 to the widow, and $1111.11 to each of three minor children, who are step-children of plaintiff.

As there is a little conflict upon some of the circumstances, although in the main there is an agreement, an outline sufficient to explain the case is all that can be given.

The transaction took place at the crossing of Prescott street and defendant's road in the city of Grand Rapids, on the twenty-fifth day of September, 1883, between one and two o'clock in the afternoon. The defendant had made up a train of loaded freight cars at its shops not far from three-fourths of a mile south; and this train was moving to the depot, which was at a considerable distance off, to the northward of Prescott street, which runs east and west, and is a city street traveled freely. The track of defendant is one main track, without switches or side tracks of its own in that neighborhood, and it crosses Prescott street very nearly at a right angle. Just east of it, and within a space of about forty feet, are the main track, and two side tracks of the Michigan Central Railroad. The easterly side track, called the Bending Works track, is a few feet from a building belonging to the Grand Rapids Bending works, lying on the south side of Prescott street, and separated by an interval from another building of the same works. About one hundred feet north of Prescott street the defendant's line is crossed by the main line of the Chicago & West Michigan Railroad, which crosses Prescott street westward of defendant's line.

On the day in question, Nicholas Staal was driving a one-horse wagon along Prescott street, going westward, having with him a neighbor named Postma sitting on the same seat, and his son Gerrit, a lad of twelve years old, standing behind them and resting his hands on their shoulders. As they reached the Bending Works track they halted, while a Michigan Central engine was moving several coaches across. This train moved over to the north, and left one coach on that side of Prescott street. It then returned southward across the street, and as soon as the rear had passed, Staal started his

horse westward; two other teams being close behind and beginning to move after he did. Most of the witnesses say he started his horse on a trot. The distance between the Bending Works track and the east rail of defendant's track is left in a little obscurity, but seems to have been about thirty-five feet. Defendant's train came up from the south and reached Prescott street about the time that Staal started his horse. There is some conflict concerning the immediate order of events, but the horse swerved as the train reached him, and the wagon was, either before or after the persons in it were thrown out, struck, and subsequently demolished by the cars, and Staal was thrown under the train and killed, with Postma, and the boy Gerrit was injured. This suit is for the death of Nicholas Staal, and for no other cause of grievance.

The issue was whether he was killed by the negligence of defendant, and without his own negligence.

The defendant was claimed to be in fault for running over the street with too much speed, and without a flagman or other local warning or safeguard, and without the proper signals of bell or whistle; and the injury was alleged to be due to this negligence. The defendant denies the failure of any duty; denies its duty to have gates or flagmen; and claims that Staal did not exercise proper care himself.

There is the usual conflict in this case concerning bell ringing, and it was, in our judgment, left properly to the jury. The ordinances forbade using the steam-whistle. There is some very positive testimony that the bell was rung. There is some equally positive that it was not heard by those who were apparently listening. Some of the witnesses for defense testify in such a way as to indicate that their recollection is partly based on habit. The circumstances were such that, in all probability, the sound might have been drowned by or confounded with other noises, and it probably was not a very decisive fact in the case. The question of speed was also controverted. There were several witnesses who put it at about the rate allowed by the ordinances of Grand Rapids as the maximum, and some that set it higher. The train was

made up of heavy cars, and the grade was a descending one, which rendered it more difficult to stop the motion. A difference of a second or two would have avoided the mishap, and the question of undue speed was of some importance. In this point of view the question whether the train should not have stopped before reaching Prescott street, although not averred in the declaration as a substantive wrongful neglect, cannot be said to have no significance on the question of speed. If the train had come to a halt south of Prescott street, it could not, within so short a space, have acquired any considerable speed. By How. Stat. § 3376, it is made the duty of trains to come to a full stop not less than 200 nor more than 800 feet from a railroad crossing, and not to cross until the way is clear. In the present case the defendant's road crossed the Chicago & West Michigan less than 200 feet north of the south line of Prescott street, and although it was signaled that the way was clear, the statute nevertheless requires the stoppage. It is not impossible for signals to be erroneous, and the precaution has been made imperative.

The principal grievance, however, was, as claimed, the absence of any local warning. The duty of having gates or flag-men at a street-crossing is not imposed absolutely at all city street-crossings. But it cannot be held that circumstances may not impose a duty to do this or something which will be of service to passers-by. Under the charter of Grand Rapids it appears that the common council passed resolutions requiring the marshal to notify the proper officers of railroads to station flag-men at street-crossings, and that this notice reached the defendant. The court below did not recognize this as imposing any legal duty, and we need not now consider how far it did so. But the jury were told that while there was no absolute duty laid on them by law, it was for them to decide whether ordinary care and prudence required some such precaution under the circumstances. In this we think there was no error.

This was not a mere single crossing where the only danger was from cars running in one direction at a time, on a single

and clear track, plainly visible. Within a small range three separate companies had tracks crossing this highway, and one of those companies had three tracks within forty feet of defendant's. The immediate cause why the view was more or less obscured was the passing and repassing of a Michigan Central train between Staal and defendant's train, and the standing of cars upon a track near by. Defendant could not control the movements of other companies, and could not be controlled by them. This proximity made the running of all these cars, especially in opposite directions, more dangerous, as likely not only to cut off view, but also to confuse the sound of passing trains. It cannot be said that companies that obstruct the ordinary travel on city streets may not be bound to make that obstruction as little dangerous as they reasonably can ; and if from local surroundings such precautions as are sufficient generally are not sufficient there, it is open to inquiry how far they are culpable for mischief that can be traced to such neglect. We think the jury had enough before them to warrant them in considering these surroundings so dangerous as to call for some efficient local warning to passers-by.

Whether the case shows contributory negligence, which should cut off plaintiff's right of action, is also made a prominent point in the case. The negligence attributed to decedent is not seeing the train of defendant before it came into the street, and starting his horse before he could see that the way was clear, and starting him so fast that he could not be stopped.

There was sufficient testimony to go to the jury to justify them in finding that Staal did not see the train, and could not have done so where he was. Gerrit, the only survivor, testifies to the exercise of considerable caution, and his testimony indicates that his father was looking out. There is testimony of a warning whistle given by a person north of the street, but nothing to show that it was understood, if heard, as intended for such a warning. It would not necessarily be reckless conduct to omit further dilatory action under such circumstances. Whether the moving forward, as it

was done, was culpably negligent must depend on what Staal was bound to anticipate. In the absence of any knowledge of what was passing in his mind, we cannot hold him conclusively at fault, unless there is no sensible explanation to the contrary reasonably possible. But he had a right to suppose that defendant would not violate any legal duty, and he could not be bound to suppose it would fail to take reasonable measures to prevent mischief. And he could not be censured if he acted as seemed proper at the time. The case could not be taken away from the jury so as to prevent them giving to either party the benefit of any inference which might be drawn from a comparison of all the facts. If they had found him negligent, their verdict, perhaps, could not have been set aside as without support. But they have found otherwise, and we think they had enough before them to make their verdict legally sufficient.

It is objected that the testimony concerning the means for estimating damages took too wide a range. We do not think so. The object of the statute is to give such pecuniary damages, and no more, as the widow and next of kin have suffered by the loss of the person killed. In many cases there is no such immediate dependent connection between the deceased and his kindred that their loss is more than problematical. In such case their poverty and his industry or wealth can furnish no accurate guidance to a result. If they had no legal claims upon him, and received no reliable help from him, his life may have had small, if any, pecuniary value to them. But where the head of a family is taken away, there is a distinct relation between the family circumstances and the family supporter. In such a case we think the fullest insight into the family circumstances is of value in determining to what extent they are injured by the loss of their head. No special instructions were asked whereby the attention of the jury might be confined to the proper line of inquiry. If this had been desired, no doubt the judge would have given it. Without it the jury were at liberty to use their best judgment in drawing their own deductions.

We had some doubts whether there was not something in

the amount of the verdict to indicate that the jury had been misled upon the extent of their discretion. Five thousand dollars seems to be a large verdict. But when we consider how it is to be apportioned, it loses some of its apparent magnitude. The three children of the person killed are minors, and the widow is not their mother, although she seems to have been very kind to them. She is not, however, bound to assume their support by any legal obligation. These children have been deprived of any certainty of maintenance in a family· home, and as the case shows they were always maintained in ·comfort, it cannot be legally held unreasonable to award each of them a trifle over $1100, as representing what they have lost in a mere money point of view. If the widow had sued for her own loss, and there were no heirs, a verdict for the sum which now goes to her would not appear extravagant. Courts should not allow juries to give anything that goes beyond a fair pecuniary compensation based on the actual pecuniary loss. But the jury here was properly instructed to keep within those bounds, and we have no right to say they have not done so.

The only other errors assigned are based on alleged extravagances in the summing up of counsel. We do not think that there is any reason to believe the court did not in the charge prevent any danger, if it existed, that the jury would be led astray. Counsel cannot be deprived of some latitude in urging inferences from facts actually in evidence; and while they may be uncharitable, and perhaps unjust, yet the trial court may usually be expected to do whatever is necessary to preserve order and decency. An appellate court must have a very strong case of misconduct presented, before it can disturb a verdict for anything but the errors of the trial judge. This case does not seem to us to call for such action.

The judgment must be affirmed.

Sherwood and Champlin, JJ. concurred.