### CORNING v. CITY OF SAGINAW.

MUNICIPAL CORPORATIONS—LIABILITY FOR NEGLIGENCE—BRIDGES—DEFECTIVE DRAW.

A city is not liable, in the absence of statute, for an injury to a vessel resulting from its failure to maintain a draw in a bridge in such condition that it may be properly operated, where the city does not derive any benefit from the bridge but simply maintains it for the public good.

Error to Saginaw; Wilber, J. Submitted January 25, 1898. Decided March 1, 1898.

Case by Gurdon Corning and others against the city of Saginaw to recover damages for an injury to plaintiffs' barge caused by a defective draw-bridge. From a judgment for plaintiffs, defendant brings error. Reversed.

*E. L. Beach,* for appellant.

*Weadock & Purcell* and *James H. Davitt,* for appellees.

LONG, J.    Plaintiffs are the owners of the barge King, and recovered a judgment for damages resulting from the colliding of their barge with the pier which supports the draw of what is known as the "Johnson-Street Bridge," in the defendant city.    The collision occurred on April 13, 1895, while the barge was being towed down stream by a tug; and it is claimed that the immediate cause of it was the failure of the bridge tender to seasonably open the draw in response to properly-given signals; that the inability to so open the draw in time was attributable to the sticking or binding of the ends of the draw against the adjoining ends of the bridge.    While the declaration contained four counts, the case was submitted to the jury upon the fourth count solely, which charged, substantially, that it was the duty of the defendant to keep the ends of the swing and the adjoining portions of the bridge in repair, so that the draw could not stick or become caught or fastened when it became necessary to open it for the passage of vessels, and that defendant had neglected to perform its duty in that regard.    The court charged that the burden was upon the plaintiffs to show either that the city had actual notice that the bridge was out of repair in the manner charged in this fourth count, or that it was so out of repair for such a length of time before the accident that the city, in the exercise of ordinary care, ought to have known it; and, further, that, whether the city received actual notice of its defective condition or only constructive notice, a sufficient length of time must have elapsed after the notice was received in which, in the exercise of ordinary care, the necessary repairs could have been made. Before any witnesses were sworn in the case, the following facts were agreed to:

"That, when the collision in question occurred, the city was the owner and in control of the Johnson-street bridge;

that, a number of years ago, it was built by the city, by permission of the general government and the board of supervisors of Saginaw county; that the bridge tender was in the employ of the city, having been appointed as such bridge tender under the ordinance of the city, and was placed there by the city; that the plaintiffs presented a claim for damages to the council before this suit was brought, and the same was disallowed; that the Saginaw river, at the point where the bridge crosses it, is a navigable stream, and tributary to the Great Lakes."

Plaintiffs introduced testimony tending to sustain the claim that the bridge was out of repair in the manner alleged, and that the barge was injured by reason thereof, and that the plaintiffs were in the exercise of due care. The defendant introduced testimony tending to show that the bridge was not out of repair, and that on the day in question the bridge did bind, and that there was a short delay in opening it; that the city had no notice of any such defect. The court instructed the jury that if they found the bridge was out of repair in the manner alleged in the declaration, and that the barge was injured by reason of its being so out of repair, and that the plaintiffs, in handling the tug, were without fault, the plaintiffs were entitled to recover. The jury found a verdict in favor of plaintiffs; and, judgment having been entered thereon, defendant brings error.

The defendant requested the court to charge the jury that, there being no statute providing for any action against the city for the negligence complained of, the verdict must be in favor of defendant. This was refused. The plaintiffs contend that the city is liable without any statute expressly creating such liability. The argument in support of this contention is that our State Constitution (article 18, § 4) forbids the bridging of a navigable stream without authority obtained from the board of supervisors under the provisions of law, and provides that "no such law shall prejudice the right of individuals to the free navigation of such streams;" that a law was passed in 1851 authorizing the bridging of such streams, but requiring

persons or corporations wishing to construct a bridge over a stream which is navigable, like the present, for vessels of 15 tons burden or more, to petition the board of supervisors for authority to do so, and also to give due notice by publication of the application for such authority. The statute of 1851, among other.things, provides:

"Every such petition shall set forth the kind and description of the bridge proposed to be constructed, and whether the same is to be constructed with a draw, or whether any, and what, provision is to be made for the passage of vessels or boats; and such board shall have the power to grant or refuse the prayer of such petition, upon such terms as they may deem just and reasonable, and to prescribe what description of bridge may be constructed, or to prohibit the construction of any bridge on the proposed location, as in their judgment the public interest shall require." 1 How. Stat. § 495.

It is therefore contended that, inasmuch as it is admitted that the city built the bridge under the authority obtained from the board of supervisors, it must be presumed that, in obtaining that authority, the requirements of the statute were complied with both by the city and board; that on this assumption the petition must have contained provisions for a suitable draw to permit the passage of boats and vessels, and the authority given must have included a like provision, as a draw was actually constructed, which was adequate while in repair. It is further contended that the city, after so obtaining authority to construct such a bridge, and after actually constructing and operating it for years, could not permit the draw, through negligence, to become dangerous or useless, without liability to persons navigating the stream who might be injured thereby; that is, that when authority to construct the bridge with a suitable draw was obtained, and acted upon, the duty was thereby imposed upon the city to keep it in substantially the same condition as proposed, or, at least, to use ordinary care to prevent it from becoming dangerous to navigation through neglect to repair.

This contention cannot be maintained. It is undoubt-

edly true that, without the action of the board of supervisors, the bridge could not have been erected, and it would probably never have been permitted without the erection of a draw or swing therein for the purpose of the passage of boats, as the Saginaw river is navigable for craft of the burden mentioned in the act. If not erected in accordance with the requirements of the board of supervisors as provided in the act, or if it impeded the navigation of the river, it could undoubtedly have been abated as a nuisance. 4 Am. & Eng. Enc. Law (2d Ed.), 926, and cases cited in note; *Hill* v. *City of Boston*, 122 Mass. 344 (23 Am. Rep. 332). There is nothing in those statutes, however, creating a liability upon the part of the municipality to private persons for injuries occasioned through the failure of the municipality to either construct or maintain a draw, or for failure to keep the draw in repair. Neither has the general statute creating liabilities against municipalities for failure to keep their highways, etc., in repair, any application here. The only question, therefore, is whether there is any common-law liability for the damages occasioned. Judge Dillon, in his work on Municipal Corporations, says:

" According to the prevailing rule, counties are under no liability in respect of torts, except as imposed (expressly or by necessary implication) by statute. They are political divisions of the State, created for convenience, and are usually regarded not to be impliedly liable for damages suffered in consequence of neglect to repair a county road or bridge. Such a liability, unless declared by statute, is generally, but not quite universally, denied to exist." 2 Dill. Mun. Corp. (4th Ed.) § 963.

In this State it is the settled rule that it requires legislative action to create any liability to private suit for nonrepair of public ways. *City of Detroit* v. *Blackeby*, 21 Mich. 84 (4 Am. Rep. 450). The rule in the above case has been followed since it was announced, in 1870. The statute creating liability for nonrepair of highways has since been passed. But, as we have said, it has no application to the present case, and in fact it is not contended

by counsel that it is applicable. Although the English books contain numerous cases of indictments or informations for neglect to repair highways and bridges, in no instance referred to have the English courts sustained a private action against a municipal corporation for such neglect, except under a statute expressly or by necessary implication giving such remedy. *Hill* v. *City of Boston,* *supra,* and cases there cited. In *French* v. *City of Boston,* 129 Mass. 592 (37 Am. Rep. 393), it appeared that the statute imposed upon the city the duty of maintaining Warren bridge as a public highway "at its own expense, and in accordance with such ordinances as the city council of said city may establish." The duty thus imposed upon the city was a public duty, from the performance of which it received no profit or advantage. It was said by the court:

"It is well settled in this Commonwealth that no private action can be maintained against a city for the neglect to perform such a duty, unless it is expressly authorized by statute. *Hill* v. *City of Boston,* 122 Mass. 344 (23 Am. Rep. 332), and cases cited. By statute, the city is liable to a traveler thereon for any defect in the highway of which the bridge is a part; but there is no statute which makes it liable to a private action for a failure to provide a draw of proper width, or for the carelessness of the superintendent of the bridge in delaying vessels which seek to pass through the draw. It follows that the plaintiff cannot maintain this action."

In the present case it does not appear that the city derives any benefit from the bridge. It is maintained for the public good by the city in its governmental or public character, and not in its proprietary or private character, and the city is therefore not liable in this action, as the statute fixes no such liability. 1 Dill. Mun. Corp. (4th Ed.) § 66.

The court below was in error in refusing the defendant's request to charge. Judgment is reversed, and no new trial ordered.

The other Justices concurred.