RANDALL *v.* TOWNSHIP OF SOUTHFIELD.

BRIDGES—NOTICE OF DEFECT—EVIDENCE.

 In an action against a township for damages occasioned by the collapse of a bridge, evidence that there was a decayed spot in the stringer, the breaking of which caused the accident, which looked darker than the other portions of the stringer, at least when it was wet, does not show conclusively that the township had constructive notice that the structure was in need of repair, but its force as bearing upon that question is for the jury.

Error to Oakland; Smith, J.    Submitted February 4, 1898.    Decided March 29, 1898.

Case by George E. Randall against the township of Southfield for damages caused by a defective bridge. From a judgment for plaintiff, defendant brings error. Reversed.

*Samuel W. Smith* and *A. & S. H. Perry,* for appellant.

*Sayles & Sayles* and *James H. Lynch,* for appellee.

MONTGOMERY, J.    The plaintiff brought this action to

recover damages for injuries to a traction engine which fell through a bridge over the River Rouge within the limits of defendant township. The case was tried before a jury. Plaintiff recovered a verdict of $745, upon which judgment was entered, and defendant brings error.

The accident occurred on September 27, 1890. The bridge was a truss bridge, and gave way because of the breaking of one or more of the outside stringers of the bridge. The questions involved were whether the stringers in question were in fact defective (and of this, as to one of them, there was abundant proof); whether the defect was of such an obvious character that the officers of the defendant charged with the care of its bridges should, in the exercise of due care, have known of the defect, and repaired it (and on this point the evidence was conflicting); and, lastly, whether the plaintiff was free from contributory negligence (which last question was left to the jury under proper instructions).

The principal questions discussed in this court relate to the instructions upon the subject of constructive notice to the township of the defect or defects in the stringers. The plaintiff called two witnesses, who testified as to the condition of the stringers previous to the injury. Will Cook testified on direct examination as follows:

"We started to water our horses there, I think, in the latter part of May, but I couldn't state when I first saw it. I first noticed the defect when riding a horse down there to water. *There was a little decayed spot, six or seven feet, I should judge, from the west end of the bridge, on the south. It extended a foot and a half along the stringer, I should judge, and two or three inches up and down along the face. There was an old check running each way from the rotten spot. It ran east from the spot perhaps two feet. It might not have been so far, I couldn't say. I should judge it ran about the same distance west of the spot. It could not have been so much. I never made any closer examination than from the back of a horse at times when I was down there.*"

On cross-examination the witness testified that the

defect did not particularly attract his attention, and that he did not regard it as anything serious; that "the decayed spot was a little darker than the other; certainly it is when it is wet; of course, it would dry up, and look like the rest of the stick;" and further, by question and answer, as follows:

"*Q.* Then, when it wasn't wet, it looked more like the rest of the stick,—is that right?

"*A.* It looked a little darker, but, of course, it looked more like the rest of the stick.

"*Q.* When it wasn't wet?

"*A.* When it wasn't wet; and when it was wet it looked dark."

The witness further stated that the rotten spot was at about the center of the stringer, on the flat side.

Edward Prince testified, on direct examination, that he noticed a rotten spot in the stringer, six, seven, or eight feet from the west end; that it was on the top side of the stringer. On cross-examination the witness locates the decay at a point where an iron rod ran through the stringer,—a point a much greater distance from the west end,—and testified: "I did not see any decayed spot on the stringer myself six or seven feet from the west end."

The circuit judge, in instructing the jury on the question of notice, used the following language:

"It is his [plaintiff's] theory that the bridge, or south stringer of the bridge, was decayed, and broke; or, as one of the witnesses states it, that it had a decayed spot, and that they noticed it some months previous to the 27th day of September. I refer more especially to the testimony of witnesses Cook and Prince; and, that being true, the township is chargeable with constructive notice. I think I ought to say to you, and it is my duty to say to you, that if you believe the testimony of witnesses Cook and Prince, more especially the testimony of Prince, that such a decayed spot was existing in that stringer as described, and that the plaintiff did not by his own negligence contribute to the injury, that he is entitled to recover from the township."

The substance of this instruction was also embodied in a request preferred by the plaintiff and given by the court.

We think these instructions were error. The instructions amounted to holding that, as matter of law, such a decayed spot as described by either of these witnesses was enough, in and of itself, to amount to notice that the sleeper was unsafe. That this question was competent to be considered by the jury cannot be gainsaid, but it was insisted by counsel for the defendant, and we think rightly, that the effect of these defects as notice should be determined by the jury. The cross-examination of Cook leaves it doubtful whether the discoloration was perceptible in dry weather, and the question of the extent of the discoloration, the appearance of the spot, its location, and what it would suggest to those having charge of the bridges of the town, were questions for the jury; the test being whether the appearances were such as to suggest to a person of ordinary skill and judgment the fact of unsafety or the necessity of further investigation, and whether such defective appearances existed for such a length of time as that their inspection at reasonable intervals would have disclosed their appearance to the inspectors. *Woodbury* v. *City of Owosso*, 64 Mich. 239; *Blank* v. *Township of Livonia*, 95 Mich. 229; *Township of Medina* v. *Perkins*, 48 Mich. 67; *Alberts* v. *Village of Vernon*, 96 Mich. 549; *Snyder* v. *City of Albion*, 113 Mich. 275; *Moore* v. *Township of Kenockee*, 75 Mich. 332 (4 L. R. A. 555).

We think none of the other questions require discussion. The judgment is reversed, and a new trial ordered.

The other Justices concurred.