## SCHARMAN v. BAY COUNTY BRIDGE COMMISSION.

1. NEGLIGENCE—HIGHWAYS AND BRIDGES—STATUTES.

The bridge commission created by the legislature to control the bridges of Bay county is not liable in an action on the case for negligence to the father of a minor killed by riding off the end of an open and unguarded drawbridge in the city of Bay City, under 1 Comp. Laws, § 3441, or 2 Comp. Laws, §§ 5516-5521. By an equally divided court. MOORE, J., and BLAIR, C. J., and MONTGOMERY and MCALVAY, JJ., dissenting.

2. SAME—CONTRIBUTORY NEGLIGENCE—OPEN DRAWBRIDGE—NEGLECT TO GUARD.

A bicyclist, who, in the dark, rides off the end of an unguarded drawbridge open for the passage of a boat, is not, as a matter of law, guilty of contributory negligence. BROOKE and GRANT, JJ., dissenting.

3. COURTS—PRACTICE IN SUPREME COURT—DIVISION OF THE JUSTICES.

A directed verdict will be affirmed where four of the eight justices of the Supreme Court hold that a verdict should be directed, but for a different reason than that adopted by the trial judge.

Error to Saginaw; Gage (William G.), J. Submitted November 11, 1908. (Docket No. 78.) Decided July 15, 1909. Motion for a new trial denied December 31, 1909.

Case by Gottfried Scharman, administrator of the estate of Calvin Scharman, deceased, against the Bay County Bridge Commission for negligently causing the death of plaintiff's intestate. A judgment for defendant on a verdict directed by the court is reviewed by plaintiff on writ of error. Affirmed by an equally divided court.

*De Vere Hall*, for appellant.

*Stoddard & McMillan*, for appellee.

MOORE, J. Bay City is situate on opposite banks of the Saginaw river. The river is about one-half mile wide

from bank to bank. In the river is an island called the "Middle Ground." There is a highway from West Bay City to Bay City. On such highway each part of the river is spanned by a bridge having a draw or swing span for the passage of vessels, and going from the west eastward, in order, the roadway comprises the west bridge, an asphalt or macadam street about one-quarter mile in length over the island, and the east bridge having a span, both bridges having iron frames, with high sides and overhead beams. In dimensions, the east bridge from the west end to the draw or swing span is upwards of 120 feet, the span itself 202 feet, and the remaining length of the bridge from the span to the east end 129 feet. When the span is swung, the westerly end swings to the south. There is no gate or chain or guard or provision of any kind at either end of the span on either bridge, or at any place along the bridges or roadway, to prevent teams or pedestrians from passing off the open draw. The span is swung with a lever operated from near the center of the span, and, before swinging, the bridge tender rings a bell located above the center of the span to give warning. The bridge tenders are on the span, and no person is stationed along the roadway or on the bridges to give warning to the drivers of teams or pedestrians that the span is about to open.

The son of the plaintiff, after attending choir practice in the evening, rode east from West Bay City into the open draw, and was drowned. Plaintiff was appointed as administrator and brought this action; the declaration comprising three counts:

(1) Failure to keep the bridge and street in safe, fit, and convenient condition for travel.

(2) Failure to maintain a gate or gates on the roadway or bridges under sections 5516–5521, 2 Comp. Laws, thus rendering the bridges and roadway unsafe, unfit, and inconvenient for travel.

(3) Failure to maintain a gate or gates on the roadway or bridges under sections 5516–5521, 2 Comp. Laws.

At the conclusion of plaintiff's proofs, counsel for de-

fendant moved the court to direct a verdict in its favor for three reasons: *First,* because defendant was not liable, and could not be made liable, under its act of incorporation, for the claim asserted in the declaration; *second,* because it did not appear that plaintiff had sustained any damages by the death of deceased; *third,* because deceased was guilty of contributory negligence. The motion was overruled. At the conclusion of the testimony counsel for defendant again moved the court to direct a verdict in its favor. This motion was overruled, and the case was given to the jury. On the evening of the same day, and in the absence and without the knowledge of counsel for either party, the jury were brought into the courtroom and the following proceedings were then had:

"*The Clerk:* Gentlemen, have you agreed upon a verdict?

"*Foreman:* We have not. * * *

"*The Court:* Are you thoroughly satisfied it is impossible for you to agree upon a verdict?

"*Foreman:* I think so.

"*The Court:* It has been a very expensive trial for this county, and a matter we are not interested in locally, and I was in hopes you could agree upon a verdict, but I would rather you should disagree than that any man should violate his conscience in the matter. You are all satisfied you cannot agree, are you? (Jury answers in affirmative.) The court is satisfied that the deceased was guilty of contributory negligence in the manner in which he approached the bridge on that night, no matter whether it was dark or light. If it was dark, it was his duty to get off and stop and see what the danger was. If it was light, then he certainly could see what was ahead of him. There can be no question about it. Therefore I take it upon myself to direct you to render a verdict in favor of the defendant of not guilty. You will receive the verdict, Mr. Clerk."

A verdict was thereupon entered. The case is brought here by writ of error.

The first question demanding consideration is: Was the judge justified in taking the case from the jury upon the ground that it could be said, as a matter of law, de-

ceased was guilty of such negligence as to preclude his recovery. In overruling the motion for a directed verdict the trial judge said:

"On the point of contributory negligence of the deceased, I think at this stage, anyway, that it is not at all clear that the deceased was guilty of contributory negligence. There is some dispute with regard to the conditions at the bridge and this draw at the time of the accident, and while the plaintiff has not shown that the deceased was without fault on his part, still, in view of the rule established that there is no presumption of negligence upon his part, I think at this time the court is not warranted in directing on that ground."

There is a printed record of upwards of 300 pages, much of it devoted to descriptions of the approach to the draw, the obstructions in the highway, the draw itself, its appearance when the lights were on, the approach to the bridge and on the bridge itself, the way the deceased was riding, his going into the open draw, his knowledge of the situation before the time of the accident, where the body was found, and where the wheel was found. The testimony was not all to the same effect. One of the witnesses who was on the bridge and near the draw testified in part as follows:

"The swing opened that evening. I heard the signal given before the swing opened. It was a bell, and the occasion of the opening was a boat going through. I never see the boat, but I judge it was an awful slow boat, and it didn't seem to go through the bridge very fast. I should judge that the swing was open 10 or 15 minutes before the young man rode off. The boat that was going through was not sufficiently large so that it showed any lights to one where we were. I didn't see any smoke coming from it, and there was no warning or signal or notice of any kind given that the bridge was to be opened other than this bell. I saw the bridge open. I never paid much attention to how they opened it. It was only the second time I ever was on it. The first I saw of young Scharman I and the others got down from the railing, and were going to go and watch the boat come through. Young Scharman came on his wheel, and he whistled to

me, and I got out of his road. With reference to the edge of the end of the bridge, I stood [pointing] along here. This is where he was coming. This is the west fixed span, and I should judge we were right in here [pointing]. * * *

"*A*. I was walking across from the left-hand side to the right-hand side of the bridge, going east. I was going on to watch the boat come through, and he came up behind me and whistled, and I stepped right out of his road. He was on a bicycle, and, when he whistled, I did not stop or anything. He wasn't going very fast, and I thought he saw the bridge and was going to stop for it, but he kept right on riding.

"*Q*. Did anyone stop him?

"*A*. Not to my knowledge.

"*Q*. Did you hear anyone say anything to him at all?

"*A*. No, sir; I never paid much attention to the electric light until we went to run up there after he went over.

"*Q*. what did you notice, then?

"*A*. I noticed it was very dark. I saw him going off over the bridge, and, as soon as he did that, I and Kinsey and Cowan ran up there.

"*Q*. What did you notice as you looked—whether you could see that the swing was open from where you stood?

"*A*. Well, sir, I knowed the swing was open.

"*Q*. Other than that you could see?

"*A*. Well, from where I stood we could see the boat on the other side of the swing. They just started through the draw.

"*Q*. But could you see that the swing was open if you hadn't known it?

"*A*. No, sir; I could not.

"*Q*. Why was that?

"*A*. Well, sir, I didn't seem to pay any attention to it. I knew it was open, and, when I run up there, I went up cautiously. It was pretty dark.

"*Q*. Was it easy to tell when you got to the place where the swing began?

"*A*. No, sir.

"*Q*. What did you observe or notice?

"*A*. When we run up there, I couldn't see that draw myself. * * * There was no person on the bridge that I could see, or did see, between me and the open draw. I guess Tom Paradise and that young lady was the closest of anyone who was on the bridge.

"*Q.* They were right at the opening ?

"*A.* Yes; so they say. I could not see from where I was. It was too dark for me to see them.

"*Q.* When the swing is open, have you noticed the effect that the water has upon absorbing the electric light that is thrown upon it ?

"*A.* Yes.

"*Q.* What is that effect ?

"*A.* It is very dark. * * *

Other witnesses testified that the light falling upon the open water made a black looking shadow, and that as deceased approached the west draw, at moderate speed, he looked both up and down the river, and then directly ahead.

It has been held that, in the absence of proof, the presumption is that deceased used due care. *Mynning* v. *Railroad Co.*, 64 Mich. 93 (31 N. W. 147, 8 Am. St. Rep. 804); *Grostick* v. *Railroad Co.*, 90 Mich. 594 (51 N. W. 667); *Schremms* v. *Railroad Co.*, 145 Mich. 190 (108 N. W. 698, 116 Am. St. Rep. 291). It has been held that knowledge of a defect in the highway did not necessarily establish negligence on the part of one injured by reason of such defect. *Lowell* v. *Township of Watertown*, 58 Mich. 568 (25 N. W. 517). See, also, *Dundas* v. *City of Lansing*, 75 Mich. 499 (42 N. W. 1011, 5 L. R. A. 143, 13 Am. St. Rep. 457); *Dittrich* v. *City of Detroit*, 98 Mich. 245 (57 N. W. 125); *Sias* v. *Village of Reed City*, 103 Mich. 312 (61 N. W. 502). The rule of law was stated by Mr. Justice CHRISTIANCY as follows:

"Courts may not always be able to define precisely all the particulars which would be necessary to constitute diligence under all circumstances, and there may even be cases depending upon a complication of facts and circumstances admitted or found to be true, in which it would be better to leave the jury to draw the inference of diligence or negligence than to undertake to draw it themselves. * * * It is frequently difficult, perhaps sometimes impossible, to determine how far the question of negligence or reasonable diligence is a question of law and how far a question of fact. It is generally a question of mixed law and fact; and always, when the facts are

found or omitted, if they be such that all reasonable men will be likely to draw from them the same inferences, it is a question of law for the court." *Lake Shore, etc., R. Co.* v. *Miller*, 25 Mich. 274, 293.

Negligence and contributory negligence depend upon the circumstances of the particular case. The general rule is that they are questions for the jury, and they do not become questions of law except on undisputed testimony. *Burroughs* v. *Ploof*, 73 Mich. 607 (41 N. W. 704); *Fox* v. *Iron Co.*, 89 Mich. 387 (50 N. W. 872). This has led to the establishment of the doctrine that all reasonable minds must reach the same conclusion before negligence and contributory negligence will be treated as presenting questions of law exclusively. *Sadowski* v. *Car Co.*, 84 Mich. 100 (47 N. W. 598); *Ashman* v. *Railroad Co.*, 90 Mich. 567 (51 N. W. 645); *Becker* v. *Railway Co.*, 121 Mich. 580 (80 N. W. 581). See, also, *Detroit, etc., R. Co.* v. *Van Steinburg*, 17 Mich. 99; *Teipel* v. *Hilsendegen*, 44 Mich. 461 (7 N. W. 82); *Marcott* v. *Railroad Co.*, 47 Mich. 1, 6 (10 N. W. 53); *Staal* v. *Railroad Co.*, 57 Mich. 239 (23 N. W. 795); *Klanowski* v. *Railway Co.*, 57 Mich. 525 (24 N. W. 801). Applying these cases to the evidence disclosed by the record, we think it cannot be said, as a matter of law, that the negligence of the deceased was such as to preclude a recovery.

It is urged that the conclusion of the circuit judge ought to stand for the reason that the plaintiff suffered no pecuniary loss, as the son had almost attained his majority. We cannot say from this record that the damages of plaintiff were only nominal. The circuit judge took a different view of that question from counsel, and left it to the jury in his general charge. He put his direction of the verdict explicitly upon the ground of contributory negligence. In any event, the plaintiff would be entitled to the earnings of his son until he had attained his majority. It is said:

" The conclusion finally reached by the circuit judge is also correct for the reason that the defendant is not liable

in an action by a third person for damages for failure to keep the bridge in repair."

It is contended:

"The bridge in question is a part of the public streets or highways of the city. It is maintained by the defendant for the public benefit, and neither the city nor the defendant derives any revenue or benefit therefrom, and the members of the commission serve without compensation. The defendant is simply the established municipal or public agency, charged with the duty of maintaining the bridge."

The record shows defendant had on hand for purposes of repair and operation upwards of $17,000. The act under which defendant is acting was construed in *People* v. *Bridge Commission*, 115 Mich. 622 (73 N. W. 901), where it was held to be the duty of defendant to keep the bridge and its approaches in repair. Sections 5516, 5517, 5518, 2 Comp. Laws, contain provisions as to what is required in relation to gates where a draw or swing is to be operated in a bridge. Section 3441, 1 Comp. Laws, reads, in part, as follows:

"That any person or persons sustaining bodily injury upon any of the public highways or streets in this State, by reason of neglect to keep such public highways or streets, and all bridges  *  *  *  on the same in reasonable repair, and in condition reasonably safe and fit for travel by the township, village, city or corporation whose corporate authority extends over such public highway, street, bridge  *  *  *  whose duty it is to keep the same in reasonable repair, such  *  *  *  corporation shall be liable to and shall pay to the person or persons so injured or disabled just damages.  *  *  * "

We think it cannot be said, if plaintiff's contention as to the facts is true, that there is no liability.

Judgment should be reversed, and new trial ordered.

BLAIR, C. J., and MONTGOMERY and MCALVAY, JJ., concurred with MOORE, J.

OSTRANDER, J. The court below directed a verdict for defendant upon the ground that plaintiff was, as matter of

law, guilty of negligence contributing to his injury. The court was asked to so direct a verdict upon two other grounds, viz.: That there was no testimony to support a substantial recovery for plaintiff; and that defendant was not, in any event, liable in this action. The opinion of Mr. Justice MOORE, reversing the judgment and ordering a new trial, is, for the purposes of this case, a ruling in favor of plaintiff upon all of these issues. I do not disagree with Mr. Justice MOORE upon the proposition that the question of plaintiff's contributory negligence was for the jury. I have so much doubt concerning the soundness of his conclusions upon the other points that I have reduced to writing my reasons for believing a different result should be reached.

1. Plaintiff's intestate was at the time of his death 20 years, 11 months, and 26 days old. He earned $1 a day, and gave his wages to his father, the plaintiff. Four working days intervened his death and his majority. Upon the theory that the plaintiff was bound to support him and was entitled to his services, $4 only could be recovered. I have found in the record no other testimony tending to prove any pecuniary loss to plaintiff resulting from the death of his son. The father was in no manner dependent upon his son's earnings. Whether he ever would be so dependent is matter of merest conjecture.

2. The powers and duties of the defendant, so far as they are important here, are stated in section 4, Act No. 278, Local Acts 1889. See, also, Act No. 315, Local Acts 1891. It has no power to raise money, and such money as is furnished to it is required to be expended exclusively for the purpose of building, repairing, and operating bridges and the approaches thereto. The defendant is a public agency, and not merely a private proprietor, although it seems that title to one or more of the bridges was acquired by it from the county of Bay. But clearly it controls the bridges in the public interest, and could neither dispose of them nor exact tolls for their use. Nor could a judgment creditor acquire the bridges by levy

and sale on execution. It would seem that the provisions of 2 Comp. Laws, §§ 5516–5521, do not fix a statutory duty to protect the draw. If there is a statute duty imposed, it must be by 1 Comp. Laws, § 3441. But this section must be read with section 3443. Plaintiff is not proceeding upon the theory that the city of Bay City is liable for the carelessness of the bridge commission or its employés, but upon the theory that defendant is a corporation within the meaning of these sections of the statute, and subject to the liability imposed thereby. It is the city of Bay City which must furnish, by the exercise of the power of taxation, the money to pay a judgment if one is recovered. It is not a party to the suit, and no claim was presented to its governing body. It has no control over those who control and operate the bridges. It is to be noted that by section 3443—

"Highway commissioners, street commissioners and all other officers having special charge of * * * bridges * * * and the care or repairing thereof are hereby made and declared to be the officers of the * * * city or corporation wherein they are elected or appointed, and shall be subject to the general direction of such * * * city or corporate authorities in the discharge of their several duties."

The members of the defendant commission are elected by the inhabitants of Bay City. It is possible that, when Bay county owned and operated the bridges, the effect of the statute was to impose upon the county a liability, and that the words " corporation " and " corporations " meant such a municipal corporation as a county. I do not believe it was intended that the defendant should be governed at all by the provisions of the general law. I conclude that, neither at common law nor by statute, is it made liable to answer plaintiff's demand.

HOOKER, J., concurred with OSTRANDER, J.

HOOKER, J. The plaintiff appeals from a directed verdict in a cause where defendant was sued for causing

the death of plaintiff's intestate through negligence in the management of a drawbridge. The defendant is a corporation created under the provisions of Act No. 278, Local Acts 1889. Section 3441, 1 Comp. Laws, imposes liability on all corporations having duty to keep road, etc., in repair. This act was passed in 1887. The case of *O'Leary* v. *Board of Fire & Water Com'rs of Marquette*, 79 Mich. 286 (44 N. W. 608, 7 L. R. A. 170, 19 Am. St. Rep. 169), was decided in 1890, and seems to be practically on all fours with this case, so far as the question of defendant's liability is concerned, especially as the accidents upon which that case is based occurred after section 3441 had taken effect. Section 4, Act No. 278, Local Acts 1889, provides that "all moneys that shall come under the control of this commission by virtue of this act shall be expended exclusively for the purpose of building, repairing and operating said bridges and the approaches thereto," and it is not authorized to provide money for any other purpose. The application of such fund to the payment of damages arising from accidents would, to use the language of Mr. Justice CAMPBELL, "be a diminution of the power of the defendant to perform its public duties in regard to public * * * safety." See *O'Leary* v. *Board of Fire & Water Com'rs of Marquette, supra*. The judgment should be affirmed.

GRANT, J., concurred with HOOKER, J.

BROOKE, J. I concur in the result reached upon the ground that plaintiff's decedent was guilty of contributory negligence, and the verdict was therefore properly directed.

GRANT, J. I also concur in the opinion that plaintiff was guilty of contributory negligence.

#### ON MOTION FOR NEW TRIAL.

PER CURIAM. Motion is made herein on behalf of plaintiff to enter judgment of reversal in spite of the fact that, according to the opinions filed herein, it was appar-

ent that four of the justices of this court believed, upon different grounds, that the trial judge was correct in directing verdict for defendant. Consultation reveals the fact that Justices GRANT and BROOKE did in fact agree with Justices OSTRANDER and HOOKER that a verdict was properly directed upon the ground stated in the opinion of Mr. Justice OSTRANDER. They did not, however, agree with Mr. Justice OSTRANDER upon the ground that the question of contributory negligence was for the jury.

Four of the justices of this court, therefore, are agreed that the verdict was properly directed upon the same ground. In saying this, we must not be understood as holding that the contention of the plaintiff should be sustained even though the justices concurred in affirmance upon different grounds.

The motion is denied.