BEACH *v.* CITY OF ST. JOSEPH.

1. MUNICIPAL CORPORATIONS—NEGLIGENCE—BRIDGES—MAINTENANCE OF DRAWBRIDGE.

In an action for negligence in failing to properly guard a drawbridge so that an automobile in which decedent was riding ran off the open draw, the question whether the driver was or was not guilty of contributory negligence for driving through the open gate at the entrance to the bridge, which was out of order at the time so that it did not close when the draw opened, was properly left to the jury as a question of fact under the evidence.

2. DEATH—SURVIVAL ACT—DROWNING.

Where there is evidence of survival after an injury, however short, some courts hold that damages may be recoverable under the survival act. Where the injury is

continuing and results in death within a few moments, it is instantaneous within the meaning of the statute. If the death is instantaneous plaintiff is limited to his right under the death act. Death by drowning is *held* to be an instantaneous death.[1]

3. MUNICIPAL CORPORATIONS—BRIDGE — CITY — NEGLIGENT MAINTENANCE.

Operation of a drawbridge by a city is not such a governmental function as would exempt it from liability, as the duty to maintain the same in a safe condition is fixed by sections 5516, 5517, 2 Comp. Laws, 1 Comp. Laws 1915, §§ 4432, 4433, and liability is imposed by the statute for negligent failure to keep the bridge in reasonably safe repair: 1 Comp. Laws, § 3341; 1 Comp. Laws 1915, § 4287.

4. SAME—DAMAGES—PARENT AND CHILD—FAILURE TO SUPPORT.

Where the father of the deceased, who lived apart from his family, had not contributed anything to the support of the wife for more than seven years, and the deceased was engaged in teaching school on a salary, plaintiff administratrix was entitled to recover as damages the pecuniary loss actually sustained by the mother until decedent should reach the age of 21 years, after making a proper allowance for the expenses of her care and support.[2] 3 Comp. Laws 1915, § 14578.

5. SAME—DIRECTED VERDICT—BRIDGES—DEFECTS.

Where plaintiff claimed that the failure to maintain the bridge gates in working order was the proximate cause of decedent's killing, the defense was entitled to show that on the day after the accident a defect was discovered in the mechanism of the gate, which prevented it from lowering when the operator opened the draw, and that neither defendant nor its agents knew of the defect before the occurrence or had notice of it, also, that it had been recently inspected, and it was error to exclude this line of proof.

[1]Authorities on the question of nature of right of action in favor of injured person, which will satisfy the death statute in the event of his death, are collected in a note in 51 L. R. A. (N. S.) 710. And on the question of instantaneous death as test of right of action or amount of recovery, see comprehensive note in L. R. A. 1916C, 973.

[2]As to measure of damages in action by parent for death of child, see note in 17 L. R. A. 77. As to duty of one approaching drawbridge to stop, look, and listen, see note in 14 L. R. A. (N. S.) 452.

Error to Berrien; Bridgman, J. Submitted April 5, 1916. (Docket No. 18.) Decided July 21, 1916.

Case by Delia L. Beach, administratrix of the estate of Lucy Mae Beach, deceased, against the city of St. Joseph for the alleged negligent killing of plaintiff's intestate. Judgment for plaintiff. Both parties bring error. Reversed. Rehearing denied September 27, 1916.

*Gore & Harvey* (*I. W. Riford*, of counsel), for plaintiff.

*Fremont Evans* (*O. W. Coolidge* and *Stratton & Evans*. of counsel), for defendant.

KUHN, J. The plaintiff seeks to recover damages for the death of her daughter, Lucy Mae Beach, who was a passenger in an automobile which was driven into the open draw of a bridge over the St. Joseph river in the defendant city, as a result of which she was drowned. It is conceded that the gate was not lowered, as required by sections 5516-5521, 2 Comp. Laws (1 Comp. Laws 1915, §§ 4432-4437), and the action is based on the alleged negligence of the bridge tender, employed by the city, in failing to lower the gate when the draw was opened. Recovery is sought under section 3441, 1 Comp. Laws (1 Comp. Laws 1915, § 4287), and subsequent sections, known as the highway damage act. The situation was as follows: The bridge is maintained and operated by the defendant. It swings open on a center pier, under the control of a bridge tender in a tower in the center of the bridge. There were gates on the approach at each end of the bridge, which were lowered and raised by the turning of an electric button in the tower. There was a red light in the center of the highway line, below the level of the bridge floor, clearly visible when

the bridge was open. On the top of the draw there were three red and green bull's-eye lanterns, one at each end and one in the center, which showed red when the draw was open, were 8 inches wide, and were visible for some distance. On each approach were four 16-candle power lights, two on each side of the highway on iron poles. An 80-candle power light was burning in the street 160 feet north of the open draw. On the north approach, where the accident occurred, 51 feet from the draw, on the right-hand side of the street, next the sidewalk, was a glass sign 3 feet high, with the word "STOP" spelled out vertically in letters 7½ by 5 inches. The word was illuminated by three 16-candle power lights behind the glass, which were lighted automatically by the turning of the draw. This sign had been there for years, and was working that night, and could be read 300 feet distant. On each side of the approach, at the edge of the abutment, just above the level of the sidewalk, a 16-candle power red light was burning, visible 600 feet away. Street lights and wharf lights were burning on the opposite side of the river. One witness said:

"On that north approach it was about as light as electric lights could make it. A man could read a newspaper all right."

The draw was open to permit the Steamer City of Chicago to pass through, and immediately before the opening of the draw the boat blew three loud blasts to signal for the opening, and one more to let go her line. An alarm bell, 14 inches wide, placed on the top of the bridge, was rung by the bridge tender when the boat whistled. The plaintiff's counsel admits that:

"The usual lights on the street and the usual signal lights to guide navigators were burning on the bridge."

It was 11 o'clock at night. The deceased was a guest

in the automobile of Lawrence Blakeman. They had been on the beach of Lake Michigan, about a mile distant from the bridge. Only one of the head lamps on the automobile was burning, and it was being driven between 8 and 15 miles an hour. There is evidence that it could have been stopped in 35 feet. But the plaintiff contends that Blakeman and the deceased, in reliance upon the upright position of the gate, assumed that the draw was closed, and discovered that it was not, too late to save themselves. They drove headlong into the river, and the automobile was found with the emergency brake set. It also appeared that Blakeman had crossed the bridge on previous occasions, and the night before had stopped his car when approaching the bridge because of the draw being open. Several witnesses heard cries after the accident, which indicated that the deceased struggled in the water for a short time, which one witness estimated to be not more than three or four minutes. In view of this testimony, the plaintiff counted on the survival act (section 10117, 3 Comp. Laws, 3 Comp. Laws 1915, § 12383) and the death act (section 10427, 3 Comp. Laws (3 Comp. Laws 1915, § 14577), claiming $10,000 damages. The defendant's demurrer to the entire declaration was overruled, and the trial judge ruled that no recovery could be had under the survival act. The trial proceeded under an amended count based upon the death act, and the plaintiff recovered a verdict and judgment for $400, from which both parties appeal.

Many errors are assigned, and the principal questions involved are:

(1) Whether a verdict should have been directed for the defendant on the ground of contributory negligence of the deceased.

(2) Whether the evidence required a determination by the jury of plaintiff's right to recover under the survival act, and whether the court erred in permitting

the plaintiff to amend the second count of her declaration by striking out words alleging a survival.

(3) Whether the defendant, in maintaining and operating the bridge, was performing a governmental function, and was therefore not liable for injuries caused by its negligent operation.

(4) Whether the plaintiff showed proper damages under the death act.

(5) Whether prejudicial error was committed in rulings on the admission and rejection of evidence, and the granting and denial of requests for instructions to the jury.

1. We are unable to say that the plaintiff's decedent should be held to be guilty of contributory negligence as a matter of law. Before such a conclusion can be arrived at, all reasonable minds must reach the same decision, that under the undisputed testimony there was such contributory negligence as would bar recovery. See *Detroit, etc., R. Co.* v. *Van Steinburg,* 17 Mich. 99; *Teipel* v. *Hilsendegen,* 44 Mich. 461 (7 N. W. 82); *Marcott* v. *Railroad Co.,* 47 Mich. 1 (10 N. W. 53); *Staal* v. *Railroad Co.,* 57 Mich. 239 (23 N. W. 795); *Klanowski* v. *Railway Co.,* 57 Mich. 525 (24 N. W. 801); *Sadowski* v. *Car Co.,* 84 Mich. 100 (47 N. W. 598); *Ashman* v. *Railroad Co.,* 90 Mich. 567 (51 N. W. 645); *Becker* v. *Railway Co.,* 121 Mich. 580 (80 N. W. 581); *Scharman* v. *Bridge Commission,* 158 Mich. 78, 83 (122 N. W. 1098, 123 N. W. 1106); *Haines* v. *Railway Co.,* 129 Mich. 475 (89 N. W. 349); *Welch* v. *Railroad Co.,* 147 Mich. 207 (110 N. W. 1069); *Amanta* v. *Railroad Co.,* 177 Mich. 280, 285 (143 N. W. 76); *Weitzel* v. *Railway,* 186 Mich. 7 (152 N. W. 931).

It appears that Mr. Blakeman had passed over the bridge a number of times, and presumably knew that the drawbridge was provided with gates which were lowered when the draw was opened. The gates that were provided were in compliance with the legal requirements. It could be well contended that the gate,

which the record discloses was easily seen, being open, was clearly an invitation to one approaching to cross, an assurance that the way was safe. It is true that other safeguards had been provided in the way of lights and stop signals. But considering all the circumstances surrounding the case, we are of the opinion that whether or not Blakeman acted as a reasonably prudent man should act was, under the circumstances, a question of fact for the jury to determine, rather than one to be determined as a matter of law.

2. The question whether or not the plaintiff should have a right to recover under the survival act is an interesting one, which has received considerable attention from the courts. There are apparently two lines of decision, one holding that where there is evidence of a survival, however short, damages might be had under the survival act. This doctrine is followed by the Iowa and Massachusetts courts. On the other hand, we have the doctrine, followed by the Federal courts, that death by drowning is instantaneous death. See *Cheatham* v. *Red River Line*, 56 Fed. 248; *The Corsair*, 145 U. S. 335 (12 Sup. Ct. 949). Michigan seems to have followed the rule of the Federal decisions. In the case of *Olivier* v. *Railway Co.*, 134 Mich. 367 (96 N. W. 434, 104 Am. St. Rep. 607, 3 Am. & Eng. Ann. Cas. 53), Chief Justice HOOKER, discussing this question, said the following:

"We see no reason for splitting hairs as to what is meant by instantaneous death, though we can appreciate the difference between a continuing injury resulting in drowning, or death by hanging, throwing from a housetop, etc., and one where a person survives the wrongful act in an injured condition."

In *West* v. *Railway*, 159 Mich. 269 (123 N. W. 1101), the doctrine announced by this court in *Olivier* v. *Railway Co., supra*, was approved, and it was said that:

"Where there is a continuing injury resulting in death within a few moments, it is 'instantaneous' within the meaning of the statute."

In that case the plaintiff's decedent continued to live for about 15 minutes after he was struck by a street car, crossing a street in the city of Detroit. Applying the principle and logic of this decision to the situation before us, we are of the opinion that the trial judge was correct in ruling that no recovery under the facts in this case could be had under the survival act.

The objection to the amendment of the count under the death act is purely technical, as it could have done the defendant no harm, and merely served to correct an inconsistency in the declaration.

3. The statutes which the plaintiff contends fix the liability of the city are as follows:

"*The people of the State of Michigan enact,* That the corporation, firm, or individual, owning or operating any bridge within this State, free or toll, used for public travel, in which there shall be a draw or swing span for the passage of water craft, shall cause to be placed upon the approaches to such bridge, at either end thereof, not farther than ten feet from the landward ends of such draw or swing span, a gate or gates of not less than four and one-half feet in height, and of such design, shape and strength, as to effectually bar the progress of teams, animals, and foot passengers [passers], and prevent them from passing upon such draw or swing span when such gates are closed.

"Such gate or gates shall be at all times closed before such draw or swing span is opened for the passage of water craft, or any other purpose, and shall be kept closed until such draw or swing is closed, and such bridge ready for public travel." 2 Comp. Laws, §§ 5516, 5517 (1 Comp. Laws 1915, §§ 4432, 4433).

"*The people of the State of Michigan enact,* That any person or persons sustaining bodily injury upon any of the public highways or streets in this State, by reason of neglect to keep such public highways or

streets, and all bridges, sidewalks, crosswalks and culverts on the same in reasonable repair, and in condition reasonably safe and fit for travel by the township, village, city or corporation whose corporate authority extends over such public highway, street, bridge, sidewalk, crosswalk, or culvert, and whose duty it is to keep the same in reasonable repair, such township, village, city or corporation shall be liable to and shall pay to the person or persons so injured or disabled just damages, to be recovered in an action of trespass on the case before any court of competent jurisdiction." Section 3441, 1 Comp. Laws (1 Comp. Laws 1915, § 4287).

It is the contention of the defendant's counsel that the operation of the drawbridge is a governmental function, and the case of *Corning* v. *City of Saginaw*, 116 Mich. 74 (74 N. W. 307, 40 L. R. A. 526), is relied upon to sustain this contention. But an examination of that case discloses that no statute fixing liability was involved; that the court expressly said the highway statute had no application. The cases of *McKellar* v. *City of Detroit*, 57 Mich. 158 (23 N. W. 621, 58 Am. Rep. 357), and *McArthur* v. *City of Saginaw*, 58 Mich. 357 (25 N. W. 313, 55 Am. Rep. 687), relied upon by the defendant's counsel in support of this theory, were decided before the enactment of the statute upon which the plaintiff relies. These cases merely state the rule, which prevailed under the common law in a number of States, that, in the absence of express statute, there was no *implied* liability upon municipalities for an injury resulting from negligence in the performance of a governmental function. We have been unable to find any Michigan decisions which hold that the municipalities are not liable in a civil action for neglect to operate the gates of a drawbridge as required by statute, when such a neglect results in injury. The right to recover under such circumstances has been recognized in the case of *Scharman* v. *Bridge Com-*

*mission, supra,* and *Benedict* v. *City of Port Huron,* 124 Mich. 600 (83 N. W. 614).

4. It appears from the evidence that the husband of the plaintiff and father of Lucy Mae Beach lived apart from them, in the West, and had not contributed anything to the support of the plaintiff for over 7 years. The action here, however, is by the administratrix of the intestate's estate, and the recovery is had under the statute (section 13703, 5 How. Stat. [2d Ed.], 3 Comp. Laws 1915, § 14578) for the benefit of the parents, for the pecuniary loss sustained by them. The measure of such damages, if any, is limited to the prospective earnings of the child until she should arrive at the age of 21 years, taken in connection with the prospect of life, less the expense of her care and support. See *Hurst* v. *Railway,* 84 Mich. 539, at page 545 (48 N. W. 44) ; *Lincoln* v. *Railway Co.,* 179 Mich. 189 (146 N. W. 405, 51 L. R. A. [N. S.] 710). We think there was sufficient evidence in the record to warrant the submission of this element of damages to the jury. The plaintiff testified that her daughter was to earn $52.50 a month for the next eight months. teaching school. The record is somewhat unsatisfactory as to evidence upon which the jury was able to base an estimate as to the cost to the mother of her daughter's care and support, so as to arrive at the exact amount that the plaintiff was entitled to. And while this may not have been sufficient to reverse the case, attention is called to it in view of the fact that the case will have to be sent back for a new trial because of other errors hereafter discussed.

5. The statute (the highway damage act) upon which this action is predicated limits the liability for injury on its highways or bridges to the provisions of the act, ana provdes that:

"In all actions brought under this act it must be

shown that such * * * city has had reasonable time and opportunity, after knowledge by or notice to such * * · * city that such highways, streets, bridges * * * have become unsafe, or unfit for travel, to put the same in the proper condition for use, and has not used reasonable diligence therein after such knowledge or notice." 1 Comp. Laws, § 3442 (1 Comp. Laws 1915, § 4288).

It was the contention of the defendant's counsel that the accident was due to a defective mechanism, which defect had not been discovered at the time of the accident. For the purpose of showing the existence of this defect, and lack of knowledge and use of diligence by the city, he made an offer to show that the morning after the accident a defect was discovered in the mechanism of the gate which prevented its lowering when the button was turned the first time the defendant attempted to lower it after the accident; that neither the defendant nor its agents knew of any such defect before the injury, nor had any notice; and that one of the defendant's officers, when the gate refused to work on the first subsequent trial, ordered the draw closed, and fixed the defect in the mechanism of the contact box, and on the next opening of the draw the gate worked. The claim of the plaintiff is grounded solely on negligent operation by the bridge tender. We are of the opinion that the defendant had a right to have its theory of the accident, viz., a defective mechanism of which the city had no notice, submitted to the jury, and that it was prejudicial error to exclude the testimony offered, above referred to. The defendant proved that the bridge and gates were inspected only several hours before the accident, and that they worked at 8:30 o'clock, about three hours earlier. The evidence offered and rejected, in our opinion, tended strongly to show that the accident was not due to a negligent failure of the bridge tender to turn the button for the lowering of the gate, but was due to a

sudden defect in the mechanism of which the city did not have notice, even after an inspection which took place that day; constructive notice and knowledge being both negatived by the fact that the gate worked at 8:30 the same evening. As to the question of notice, see *Randall* v. *Township of Southfield*, 116 Mich. 501, 504 (74 N. W. 716); *McEvoy* v. *City of Sault Ste. Marie*, 136 Mich. 172, 175 (98 N. W. 1006); *Walls* v. *City of Detroit*, 171 Mich. 612 (137 N. W. 532).

We have examined the other assignments of error, and, finding them without merit, do not deem any discussion of them necessary. For the reason above stated, the judgment must be reversed, and a new trial granted, with costs to defendant.

STONE, C. J., and BIRD, MOORE, STEERE, and PERSON, JJ., concurred with KUHN, J. OSTRANDER and BROOKE, JJ., concurred in the result.